UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

    v.        **DECISION AND ORDER**
                                                      18-CR-49-RJA

SHAUNIQUA RODRIGUEZ,

                   Defendant.

───────────────────────────────

       Pending before the Court is Defendant Shauniqua Rodriguez's motion for an expedited hearing and motion for an order reducing her sentence to time served and releasing her to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act. (Dkt. Nos. 377, 381, 384, 392, 399, 402, 406, 408, 409, 410). The Government opposed the motion. (Dkt. Nos. 383, 389). For the reasons stated below, Defendant's motion is denied.

## **RELEVANT FACTS AND BACKGROUND**

       In March 2019, Defendant pled guilty before this Court to a one-count indictment, violating 18 U.S.C. §§ 1343 and 1349 (conspiracy to commit wire fraud). (Dkt. No. 185; CM/ECF Minute Entry for March 22, 2019). She was sentenced on July 24, 2020 to 12 months of incarceration, to be followed by 3 years of supervised release. (Dkt. No. 375; CM/ECF Minute Entry for July 24, 2020). The factual basis for Defendant's plea was that she worked for a fraudulent debt collection agency, placing collection calls to "debtors" and using various fraudulent tactics and misrepresentations, such as false threats of arrest and claims of criminal charges against the "debtors" to induce them to make payments. Defendant also served as an informal trainer for less-experienced

employees.  (Dkt. No. 185 [Plea Agreement], ¶ 4).  Defendant is currently housed at Northeast Correctional Center ("NEOCC") in Youngstown, Ohio, and her projected release date is July 10, 2021.  See "Inmate Locator", Federal Bureau of Prisons, available at https://www.bop.gov/inmateloc/ (last visited November 25, 2020) (indicating Defendant is not in Bureau of Prisons custody).

Defendant, who is 41 years old, claims that she is particularly vulnerable to severe illness or death from the virus because she (1) has asthma, (2) is obese, and (3) had failed gastric bypass surgery in 2017.  She further argues that the conditions of her confinement unreasonably expose her to the risk of contracting the virus.  Lastly, Defendant argues that her family circumstances in the context of the pandemic warrant early release.

The COVID-19 pandemic has resulted in a global public health crisis and national emergency.  "[T]he question of whether compassionate release is warranted during the pandemic remains a dynamic and fact-intensive inquiry."  *United States v. Franco*, 12-CR-932, 2020 U.S. Dist. LEXIS 111169, *2-3 (S.D.N.Y. June 24, 2020).

## DISCUSSION

### I.     Second Circuit Appeal

In an approved sur-reply, the Government argues that the Court does not have jurisdiction to decide Defendant's motion because she filed a notice of appeal from her conviction and sentence.  (*See* Dkt. No. 389 [sur-reply]; Dkt. Nos. 382 [notice of appeal], 394 [designation of record on appeal]).  Rather, according to the Government, the Court may only issue an indicative ruling under Fed. R. Crim. P. 37(a), citing *United States v. Taher*, 2020 WL 3481449 (W.D.N.Y. June 26, 2020) ("Because [defendant]'s

2

convictions and sentence are at issue before the Second Circuit, this Court lacks jurisdiction to entertain his present [18 U.S.C. § 3582(c)(1)(A)(i)] motion for a substantive modification of his sentence."); *United States v. Campbell*, 2020 WL 1958486 (W.D.N.Y. Apr. 21, 2020) (same).

In a more recent filing, however, Defendant attaches an Order from the Second Circuit remanding Defendant's appeal to this Court for the limited purpose of deciding her pending compassionate release motion. (*See* Dkt. No. 406, ¶ 3 and Dkt. No. 406-1). Thus, the Government's jurisdictional argument is moot.

## II.    Compassionate Release Motion

It is the defendant's burden to show that he or she is "entitled to a sentence reduction under the [compassionate release] statute." *United States v. Korn*, 15-CR-81S; 11-CR-384S, 2020 U.S. Dist. LEXIS 62771, *4 (W.D.N.Y. Apr. 9, 2020). Relief is proper pursuant to 18 U.S.C. § 3582(c)(1)(A) when the following conditions are met: (1) the defendant has satisfied the statutory exhaustion requirement; (2) the Court finds that "extraordinary and compelling reasons" warrant a reduction of the prison sentence; (3) the reduction is consistent with the corresponding policy statements issued by the Sentencing Commission (*see* U.S.S.G. § 1B1.13); and (4) the sentencing factors set forth in 18 U.S.C. § 3553(a) support modification of the prison term, including whether the defendant is a danger to the safety of any other person or the community. *See United States v. Poncedeleon*, No. 18-CR-6094, 2020 U.S. Dist. LEXIS 106890, *1-2 (W.D.N.Y. June 18, 2020).

Under the compassionate release statute, the Court may "reduce the term of imprisonment and impose a term of probation or supervised release with or without

3

conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). In considering these elements and factors, "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Tagliaferri*, No. 13-CR-115, 2019 U.S. Dist. LEXIS 205103, *8 (S.D.N.Y. Nov. 25, 2019).

### *Exhaustion of Administrative Remedies*

A motion under the compassionate release statute may be made by either the Bureau of Prisons ("BOP") or the defendant, but if it is the latter, only "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). The Government concedes that because Defendant is in the custody of the United States Marshals Service at a private facility and not in the custody of the BOP, she did not have to exhaust her administrative remedies before moving for compassionate release. *See United States v. Levy*, 2020 U.S. Dist. LEXIS 83544, *8-9 (E.D.N.Y. May 12, 2020) (collecting cases); *United States v. Daly*, 2020 U.S. Dist. LEXIS 61804, *4-5 (S.D.N.Y. Apr. 7, 2020); *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. Apr. 1, 2020).

### *Extraordinary and Compelling Circumstances*

The Second Circuit has recently agreed with the majority position of "district courts across the country" that "the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances." *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). Indeed, "[t]he only statutory limit on what a

4

court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237-238 (emphasis in original), quoting 28 U.S.C. § 994(t).[1]

Defendant argues that she is particularly vulnerable to severe illness or death from the virus due to her underlying health conditions, namely asthma, obesity, and failed gastric bypass surgery.  She asserts that, in the context of the COVID-19 pandemic, her health issues constitute an "extraordinary and compelling reason" for early release.  The Government counters that Defendant has not properly met her burden in asserting an "extraordinary and compelling reason" for compassionate release because she relies only upon the presentence investigation report and includes no medical records to corroborate her supposed underlying conditions.

The revised presentence investigation report ("revised report"), filed July 20, 2020, indicates that Defendant's height and weight were 5 feet 8 inches and 247 pounds, respectively, *see* Dkt. No. 365, p. 2, which the Government concedes are measurements of an obese individual.  An individual with these measurements clearly falls into the "obese" category, with a body mass index ("BMI") of 37.6 (BMI of 30.0 and above is "obese").[2]  Defendant claims that she now weighs between 290 and 300

---

[1] Some district courts argued, before *Brooker*, that two of the application notes to Sentencing Guideline §1B1.13 allow courts to determine that defendants with high-risk medical conditions in the context of the COVID-19 pandemic have established "extraordinary and compelling circumstances".  *See* U.S.S.G. §1B1.13, Application Note 1(A)(ii) (where "defendant is . . . suffering from a serious physical or mental condition . . . that substantially diminishes the ability of defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); U.S.S.G. § 1B1.13, Application Note 1(D) (where "an extraordinary and compelling reason other than, or in combination with, the reasons described" in the first three categories of the policy statement exists).
[2] *See* "Healthy Weight:  Assessing Your Weight:  Adult BMI Calculator", Centers for Disease Control and Prevention, available at
https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.

pounds due to a "significant weight gain in the past six months". A weight gain to approximately 290 pounds would result in a BMI of 44.1.

However, even assuming the measurements reported in the original presentence investigation report were accurate,[3] that report was filed back on July 15, 2019 and indicated a weight of 247 pounds. While certain changes were made to subsequent, revised reports over the following year prior to sentencing, no changes were made to Defendant's reported weight measurement. (*See* Dkt. No. 256, p. 2; Dkt. No. 263, pp. 2, 52; Dkt. No. 283, pp. 2, 52; Dkt. No. 333, pp. 2, 52; Dkt. No. 365, pp. 2, 53). An individual's weight can fluctuate, and Defendant's weight could have either increased or decreased between the time of the original report and the revised report filed closer to her sentencing date. Moreover, Defendant does not attach any medical records or other evidence confirming her current alleged weight or her purported significant weight gain. Failed gastric bypass surgery is not listed by the Centers for Disease Control and Prevention ("CDC") as a condition that does or may result in greater risk of serious illness from COVID-19. To the extent Defendant argues her alleged, failed gastric bypass surgery is evidence of her supposed drastic weight gain, she attaches no medical records in support of her contention. Her revised report only states that she had such surgery in January 2017. (Dkt. No. 365, ¶ 159).

Defendant also claims that her asthma places her at increased risk of severe illness from the virus, again with no supporting medical documentation. The revised report merely states that Defendant had been treated for "acute asthma" and that she was prescribed albuterol. (Dkt. No. 365, ¶¶ 158-159).

---

[3] The Government previously adopted all findings of the original presentence investigation report with respect to sentencing factors. *See* Dkt. No. 259.

Based on updated data from the CDC, individuals with moderate-to-severe asthma "might" be at an increased risk for severe illness from COVID-19 and those with obesity (BMI of 30 or higher but less than 40) or severe obesity (BMI greater than or equal to 40) "are" at an increased risk.[4] The Court cannot determine the severity of Defendant's asthma simply by referring to the scant information provided in the revised report; likewise, the Court cannot conclude that Defendant is currently obese.

Defendant further argues that early release is warranted because she is the sole source of the income and support for her four children (ages 13-17) and they are "home alone now". From the revised report, it appears that Defendant does not receive any child support, and at least three of her children lived with her before she was incarcerated. (Dkt. No. 365, ¶¶ 153-155). In more recent developments, Defendant argues in a submission dated October 20, 2020 that her youngest son has been sent to live with his father in Medina, New York. The father allegedly refuses to obtain internet service for the son's remote schoolwork, and the son has had to use unreliable cell phone Wifi service. In a further submission dated November 11, 2020, Defendant argues that her 16-year-old daughter is now homeless and was "turned out" by a friend's family and that her children are "now split up".

With respect to the conditions of Defendant's confinement, Defendant argues that the BOP cannot as effectively monitor the spread of the virus at NEOCC because it is a private facility, and includes voluminous exhibits showing the increased risk of contracting COVID-19 and experiencing severe complications from the virus if an

---

[4] *See* "People with Certain Medical Conditions", Centers for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (updated Nov. 2, 2020).

individual is incarcerated at a BOP facility, or in a prison in general.  Defendant submits letters from the Warden in conjunction with her successive motion papers that showcase the number of confirmed positive COVID-19 cases is increasing amongst both employees and detainees at NEOCC, essentially arguing that the virus is uncontrolled there.  *See* Dkt. Nos. 399-1, 406-3, 408-1 (letters dated 8/11/2020, 8/22/2020, 9/8/2020, 10/5/2020, 10/7/2020, 10/9/2020, 10/12/2020, 10/16/2020, 10/20/2020, 10/22/2020, 11/3/2020, 11/4/2020, 11/5/2020, 11/9/2020 [two on this date], 11/10/2020, 11/11/2020 [two on this date], 11/13/2020 [possibly two on this date], 11/16/2020 [two on this date], 11/18/2020 [at least two on this date, possibly four]).

It is uncertain when Defendant's transfer to a BOP facility is scheduled, or whether she will be transferred at all.  NEOCC, where Defendant is currently housed, appears to be experiencing an uptick in its number of virus cases.  Defendant argues in her most recent filing she was told that her NEOCC counselor tested positive for COVID-19, "yet NEOCC refused [her] request to be tested for the virus, despite close contact".  (Dkt. No. 410, ¶ 4).

While Defendant's documentation shows that there has been a recent escalation of confirmed positive cases of the virus at NEOCC, most of the country is now experiencing an alarming surge of COVID-19 cases and deaths.  In New York State, Western New York (where Defendant proposes to be released) is a recent "hot spot", with disconcerting spikes in rates of positive test results.[5]

---

[5] *See e.g.* "As the Virus Surges, How Much Longer Can New York Avoid a Full Shutdown?", Jesse McKinley and Luis Ferré-Sadurní, New York Times (Nov. 19, 2020, updated Nov. 26, 2020), available at https://www.nytimes.com/2020/11/19/nyregion/coronavirus-crackdown-second-wave-ny.html.

8

The Court finds that Defendant has failed to meet her burden of establishing that extraordinary and compelling circumstances exist in support of her motion for sentence reduction and early release. Defendant does not support her allegations of "high risk" health conditions with any medical records or other, related documentation. Moreover, the Court concludes that Defendant's family circumstances do not warrant a finding of extraordinary and compelling circumstances here. The impact of the COVID-19 pandemic on Defendant and her family is, unfortunately, not unique. There are surely many inmates who also face such difficulties. Likewise, as to the uptick in positive COVID-19 cases at NEOCC, the general United States population is sadly experiencing another escalation of cases and deaths, including Western New York as a "hot spot" of New York State.

### *18 U.S.C. § 3553(a) Factors and Dangerousness*

The Government argues that Defendant's motion for release should be denied because the § 3553(a) factors do not weigh in favor of release, and because Defendant presents a danger to others and the community.[6]

According to the Government, Defendant poses a serious risk of recidivism because she has not yet begun to receive the mental health and substance abuse treatment the Court recommended to the BOP. The Court-recommended mental health and substance abuse treatment has not commenced because Defendant is not yet in BOP custody; however, there is no indication that she will, in fact, be transferred to a

---

[6] The § 3553(a) factors include the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) afford adequate deterrence; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed training and treatment in the most effective manner. *See* 18 U.S.C. § 3553(a).

BOP facility during the remainder of her incarceration to afford her access to those programs.  Thus, while the Court considers this issue, it does not weigh against Defendant's request for release.

Rather, the Court notes that Defendant has not yet served a majority of her term of incarceration, and she was sentenced at the lower end of the applicable United States Sentencing Guidelines range of 12 to 18 months, after a two-level downward departure for substantial assistance.  (*See* Dkt. No. 376).

Moreover, Defendant has a rather extensive criminal history and was assessed at U.S. Sentencing Guidelines Criminal History Category III.  In addition to prior convictions for misdemeanors, violations, and infractions, she also has a conviction for Criminal Sale of a Controlled Substance in the Fifth Degree (a Class D felony) and Driving While Intoxicated: Previous Conviction of Designated Offense Within 10 Years (a Class E felony).  (Dkt. No. 365, ¶¶ 119-127).  Defendant's history of prior violations of release conditions is concerning as well.  Her overall adjustment to pretrial supervision in this case was "less than satisfactory", prompting the filing of four violation reports over the course of a few years, with two related to alcohol-related driving offenses.  (Dkt. No. 365, ¶¶ 5-9).  She also previously absconded from supervision.  (Dkt. No. 365, ¶ 119).

Defendant's instant offense conduct was shameful.  She threatened victims over the telephone while using an alias, and for a period she oversaw the debt collection scheme as a manager.  She also threatened victims with a "2 part felony complaint" and an "arrest" to induce them into making payments.  (Dkt. No. 365, ¶¶ 83-84).  Notably, one of the victims of the scheme was a single mother just like Defendant, who made

payments because she did not want to lose her job as a nurse.  (Dkt. No. 365, ¶¶ 53-54).

Lastly, Defendant has not presented a valid release plan to the Court, other than to request home confinement or home detention "to allow her to take care of her children for the balance of her sentence", and a vague suggestion that she "could return to work" if released.

The Court has carefully considered Defendant's history, the seriousness of Defendant's offense conduct, and the other § 3553(a) factors, and finds that those factors weigh against early release.

## CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release (Dkt. Nos. 377, 381, 384, 392, 399, 402, 406, 408, 409, 410) is DENIED.

**IT IS SO ORDERED.**

Dated:  December 1, 2020
         Buffalo, New York

                                             _s/Richard J. Arcara_
                                             HONORABLE RICHARD J. ARCARA
                                             UNITED STATES DISTRICT COURT