UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

UNITED STATES OF AMERICA,

      v.                                                    **DECISION AND ORDER**
                                                            18-CR-49-RJA
SHAUNIQUA RODRIGUEZ,

                    Defendant.

———————————————————

       The Court issued an indicative ruling pursuant to Fed. R. Crim. P. 37(a)(3) (Dkt. No. 434) construing Defendant Shauniqua Rodriguez's motion for bail pending appeal (Dkt. No. 423) as a renewed or second motion for compassionate release based on changed circumstances and stated that it would grant the motion if the Second Circuit remanded the case for that purpose.  The Court indicated it would stay release of Defendant until she submitted a plan for release and her proposed residence was verified by the United States Probation Office as appropriate.  The Second Circuit thereafter remanded the case for the Court to rule on Defendant's motion for compassionate release.  (Dkt. No. 435).  Defendant initially proposed a residence that the United States Probation Office deemed inappropriate in a March 5, 2021 memorandum to the Court and the parties.  The Court held a status conference on March 10, 2021 and suggested that defense counsel could propose an alternative residence as set forth in its text order (Dkt. No. 437).

       When the Court's indicative ruling was issued on March 1, 2021, Defendant was incarcerated at Cimarron Detention Center in Cushing, Oklahoma, a private facility.  The

Court found that Defendant had presented extraordinary and compelling reasons for a sentence reduction based on (1) her documented high-risk medical conditions, in the context of the COVID-19 pandemic; and (2) the unrefuted and limited information about Cimarron Detention Center's response to the pandemic and the COVID-19 situation at the facility, including uncertainty about availability of COVID-19 treatments and vaccines, the number of inmates testing positive for COVID-19 as compared to the unstated total inmate population, and the questionable availability of substance abuse and mental health treatment programs for Defendant at a private facility as opposed to a Federal Bureau of Prisons ("BOP") facility.  The Court also considered, in issuing the indicative ruling, Defendant's completion of a majority of her sentence of incarceration.

    At the status conference held on March 10, 2021, the Court's court reporter informed the parties upon checking the BOP's Inmate Locator that Defendant had been moved to the custody of the BOP at FPC Alderson in Alderson, West Virginia.[1]  Defense counsel questioned the timing of this transfer due to the Court's indicative ruling and pending, potential reduction in sentence and release of Defendant.  The Assistant U.S. Attorney stated that she would move for reconsideration of the Court's indicative ruling based on Defendant's changed conditions of confinement, and the Court directed the Government to also address the reason for Defendant's recent transfer in the event it could obtain that information.

    The Government then moved for reconsideration (Dkt. No. 438) of the indicative ruling but did not state the reason for Defendant's transfer to BOP custody.  The Government argues that the Court's concerns about Defendant's conditions of

---

[1] See "Inmate Locator", Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 24, 2021).

confinement are now ameliorated because the BOP at FPC Alderson follows the Centers for Disease Control and Prevention's precautions and a Modified Operations plan; at the date and time of the filing (March 10, 2021), FPC Alderson had only one confirmed positive inmate case of COVID-19 and one positive staff case, as publicly reported by the BOP; Defendant has access to the COVID-19 vaccine and she is on BOP's priority list for vaccination due to her medical condition of obesity; and she would "very likely" have therapeutic treatments available to her at hospitals or medical facilities within one or two hours from FPC Alderson were she to contract the virus and need more intensive treatment than the facility could provide.  In addition, the Government expressed concerns about Defendant being released to the residence initially proposed by her for essentially the reasons stated by the United States Probation Office.

Defendant opposed the motion for reconsideration (Dkt. No. 439), stating the recent transfer of Defendant to BOP custody was "hardly . . . coincidental", and providing further information concerning Defendant's initially proposed residence and why that should be deemed an appropriate short-term residence.  Defendant also proposed a second, alternative residence for Defendant at her grandmother's two-bedroom apartment in the Western District of New York.  Defendant represented that, although her grandmother is 89 years old, she had "received her first COVID-19 vaccine shot" and was "scheduled to receive her second vaccine shot this week" (the week of March 11, 2021).  (Dkt. No. 439, ¶ 8).  The next day, Defendant's supplemental filing, after defense counsel made contact with his client, indicated Defendant had arrived at FPC Alderson on March 8, 2021, and that she was placed in quarantine because of her close contact with a COVID-19 positive individual.

In response to the Court's text order (Dkt. No. 441) to keep the Court apprised of Defendant's health status and any developments regarding her quarantine status, defense counsel stated in an email to the Court and the Government on March 15, 2021 that Defendant was tested for COVID-19 after her arrival at FPC Anderson and the test was negative.  Temperatures are apparently checked every day at the facility, and she has experienced no symptoms of COVID-19.

At a subsequent status conference held today, March 24, 2021, the Government stated it could not discern, even after reaching out to the BOP, why Defendant was transferred to FPC Anderson when she was.  The Court concludes, however, that the transfer was likely due to President Joseph Biden's executive order that requires the Attorney General to not renew any Department of Justice contracts with privately operated criminal detention facilities, facilitating their removal from those facilities.[2]

As to Defendant's changed conditions of confinement, there is clearly greater transparency about COVID-19 conditions at BOP facilities as compared to the private facility where Defendant was previously housed.  According to BOP's self-reported data, as of the date of this ruling at FPC Alderson there is 1 inmate with a confirmed active case of COVID-19, and 1 staff member, out of 556 total inmates.  A total of 413 inmates at FPC Alderson have been tested for COVID-19, there are no tests pending, and there have been 19 positive tests.  Based on these numbers, it appears FPC Alderson has maintained relatively low levels of COVID-19 transmission as compared to other BOP

---

[2] *See* "Executive Order on Reforming Our Incarceration System to Eliminate the Use of Privately Operated Criminal Detention Facilities", The White House:  Briefing Room:  Presidential Actions, https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/26/executive-order-reforming-our-incarceration-system-to-eliminate-the-use-of-privately-operated-criminal-detention-facilities/ (Jan. 26, 2021).

facilities. The BOP also reports that 61 staff have completed their COVID-19 vaccination regimen, and 57 inmates have done so.[3]

These reported statistics, while generally encouraging, likely do not account for asymptomatic transmission of the virus. Moreover, although Defendant is apparently eligible for a vaccination in BOP custody, the Government has not stated when such an appointment could be scheduled, how many other inmates at FPC Alderson have pre-existing conditions and may also be prioritized, or what supply of vaccines the facility has. Defendant is also eligible for the vaccine in the State of New York based on her underlying medical conditions. In addition, it is unclear what programs may be currently suspended at FPC Alderson due to the continuing pandemic, and the Government has not offered information regarding the accessibility of substance abuse or mental health treatment programs that the Court concluded are necessary to Defendant's rehabilitation. At the status conference today, Defendant represented that she is to remain in quarantine until her release date, and she is not participating in any programs at this time.

Defendant's changed conditions of confinement do not fully alleviate the Court's concerns about Defendant's health and safety in the context of the pandemic, and the Court's conclusions about Defendant's documented medical issues and other considerations taken into account in its indicative ruling remain unaffected. Moreover, the United States Probation Office has now verified that Defendant's second proposed residence (her grandmother's) is appropriate and Defendant has submitted

---

[3] See "COVID-19: Coronavirus", Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (updated Mar. 24, 2021); "FPC ALDERSON", Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/ald/ (last visited Mar. 24, 2021).

documentation that her grandmother is now deemed fully vaccinated in response to the Court's text order (Dkt. No. 442), and Defendant has submitted a more comprehensive release plan as directed in the indicative ruling.

As such, Defendant's second motion for compassionate release (Dkt. No. 423) is hereby GRANTED, for the reasons stated in the Court's indicative ruling (Dkt. No. 434), which is incorporated by reference herein, and for the reasons stated in the instant Decision and Order.  The Government's motion for reconsideration (Dkt. No. 438) is DENIED.

Defendant shall be released from the custody of the United States Marshals Service to serve a period of home incarceration for the remaining term of imprisonment, the details of which will be set forth in a separate order.

Following this period of home incarceration, Defendant will be placed on supervised release for a term of 3 years, and she shall be subject to all standard and special conditions of supervised release stated in the original judgment (Dkt. No. 375) and sentence in this case.

**IT IS SO ORDERED.**

    *s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  March 24, 2021
       Buffalo, New York